UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HANDY, RITA DUNN, and, DOROTHY LUCKETT, | ) ) ) | FILED:   AUGUST 8, 2008 |
| Plaintiffs, | ) ) | 08CV4504 |
| vs. | ) ) No. | JUDGE HOLDERMAN MAGISTRATE JUDGE COX |
| | ) | NF |
| CHAC, INC., an Illinois Corporation; and PLANNED PROPERTY MANAGEMENT, INC., an Illinois Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

NOW COME PLAINTIFFS, Charles Handy, Rita Dunn and Dorothy Luckett, pursuant to 28 U.S.C. § 2201, and hereby seek declaratory judgment of their federally subsidized rental obligations with respect to the Housing Choice Voucher subsidy administered by Defendants CHAC, Inc. and Planned Property Management, Inc. In support of this Complaint, Plaintiffs state as follows:

**I.      INTRODUCTION**

1.   This is a suit seeking declaratory judgment that Plaintiffs, three tenants in a multi-family apartment complex at 1111 N. Dearborn, Chicago, Illinois ("the building"), do not owe back rent to the property manager of the building because the demanded rent should be paid under a federal housing subsidy program that governs Plaintiffs' tenancies.

2.   Defendant Planned Property Management, Inc. manages the building. The building originally received a federal rental subsidy from the U.S. Department of Housing and Urban

1

        Development to assist some low-income families pay their rent. In 2007, Planned Property Management, Inc. decided not to renew the rental subsidy for the building.

3. When an owner of a federally subsidized apartment building decides not to renew its federal rental subsidy contract, the existing subsidized tenants have a federally mandated right to remain in the building. The local public housing authority must work with the building owner to provide the tenants with "enhanced" Section 8 Housing Choice Vouchers ("enhanced voucher") so that tenants can continue to receive assistance to pay their rent.

4. Plaintiffs all received enhanced vouchers and are all current in their obligations under this subsidy program.

5. Under the terms of the subsidy, Plaintiffs are not responsible for the unpaid sums on their accounts. Those sums are the responsibility of either the enhanced voucher administrator (CHAC, Inc.), or the building manager (Planned Property Management Inc.), or both.

6. Because Plaintiffs are indigent, they cannot pay the sums listed on their accounts and risk loss of their subsidies and homelessness if this matter is not resolved.

7. On information and belief, there are approximately 55 other subsidized tenants in the same building in substantially similar danger.

**II**.    **JURISDICTION**

8. This case arises under the United States Housing Act of 1937, 42 U.S.C. §§ 1437 *et seq*. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

**III.   VENUE**

9.  Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside in this judicial district and because the acts and events giving rise to the claims alleged herein occurred in this judicial district.

**IV.   PARTIES**

**Plaintiffs**

10. The petitioner Charles Handy lives alone in a one-bedroom apartment in the premises located at 1111 N. Dearborn Street, unit #506, Chicago, Illinois (Mr. Handy's apartment), and participates in the Section 8 Housing Choice Voucher Program (Voucher Program).

11. The petitioner Rita Dunn lives with her daughter in a two-bedroom apartment in the premises located at 1111 N. Dearborn Street, unit # 1410, Chicago, Illinois (Ms. Dunn's apartment), and participates in the Section 8 Housing Choice Voucher Program (Voucher Program).

12. The petitioner Dorothy Luckett lives alone in a two-bedroom apartment in the premises located at 1111 N. Dearborn Street, unit 2102, Chicago, Illinois (Ms. Luckett's apartment), and participates in the Section 8 Housing Choice Voucher Program (Voucher Program).

**Defendants**

13. The respondent, CHAC, Inc. ("CHAC") is an Illinois Corporation that administers the Voucher Program in Chicago pursuant to a contract with the Chicago Housing Authority.

14. The respondent, Planned Property Management, Inc. ("Planned Property") manages the building at 1111 N. Dearborn, Chicago, Illinois in which Mr. Hand's, Ms. Dunn's and Ms. Luckett's apartments are located.

V.  **JURY DEMAND**

15. Plaintiffs demand a jury trial on all issues so triable.

VI. **STATEMENT OF LAW**

16. The Voucher Program is governed by the federal regulations codified at 24 C.F.R. Part 982, and administered by State or local entities called public housing agencies (PHAs). 24 C.F.R. § 982.1(a).

### Assisted Family's Rental Burden

17. Pursuant to the terms of this rental-assistance program:

    > HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing. . . . Families select and rent units that meet program housing quality standards. If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family. . . . [T]he subsidy is based on a "local payment standard" that reflects the cost to lease a unit in the local housing market. If the rent is less than the payment standard, the family generally pays 30 percent of adjusted gross monthly income for rent. If the rent is more than the payment standard, the family pays a larger share of the rent.

    24 C.F.R. § 982.1.

18. The unit contract rent is negotiated between the landlord and the tenant and must be in a written lease. 24 C.F.R. § 982.506 and § 982.308(b)(1). The unit contract rent is typically the rent shown on the lease.

19. Separate from the unit contract rent is the payment standard. The payment standard is a number predominately determined by reference to schedules published by HUD. The payment standard is essentially a maximum rent that HUD will subsidize, based on the unit size and location. 24 C.F.R. § 982.503.

20. In the first year of the lease, the PHA will not approve a lease if the unit contract rent substantially exceeds the payment standard.[1]  24 C.F.R. § 982.305(a)(5).

21. The amount of rent paid by the assisted family (the "Total Tenant Payment") is 30% of the family's monthly adjusted gross income plus the amount by which the unit contract rent exceeds the payment standard, if any.  (The responsibility to pay rent in excess of 30% of the family's income was removed for a special class of vouchers termed "enhanced vouchers." "Enhanced vouchers" are described in paragraphs 28 through 31.)

22. The Total Tenant Payment plus the Housing Assistance Payment must not exceed the contract rent.  To the extent it exceeds the contract rent, the owner must return the excess. 24 C.F.R. § 982.451.

## Negotiating Unit Contract Rent

23. The landlord and the assisted family negotiate the unit contract rent.  24 C.F.R. § 982.506.

24. Any changes in the lease must be in writing.  24 C.F.R. § 982.308(g)(1).

25. "The owner must notify the PHA of any changes in the amount of rent to owner at least 60 days before any such changes go into effect . . . ."  24 C.F.R. § 982.308(g)(4).

## Unit Inspection/HAP Abatement

26. Owners must maintain their buildings in compliance with Housing Quality Standards.  42 U.S.C. § 1437f(o)(8).

27. If the owner fails to maintain a unit in compliance with Housing Quality Standards, the housing authority may abate the Housing Assistance Payment.  24 C.F.R. § 982.453.

---

[1] In certain circumstances, a Total Tenant Payment can reach 40% of the family's adjusted gross income during the first year of the lease, but it cannot exceed this level.  24 C.F.R. § 982.305(a)(5).

**Enhanced Vouchers/Right to Remain**

28. In certain situations, a family that was living in a federally subsidized multifamily housing project when the project stopped participating in the subsidy has the right to remain in that project and will receive an "enhanced voucher" to continue their housing subsidy. 42 U.S.C. § 1437f(t).

29. Tenants subsidized with "enhanced vouchers" do not pay more than 30% of their adjusted gross income as rent. 42 U.S.C. § 1437f(t)(1)(D).

30. For tenants subsidized with "enhanced vouchers," the PHA is authorized to increase the payment standard to match the contract rent for the unit, assuming the contract rent amount is reasonable. The practical consequence of the "enhanced voucher" is that the Total Tenant Payment does not exceed 30% of the tenant's adjusted gross income. 42 U.S.C. § 1437f(t)(1)(B).

31. Compared with the standard Voucher Program, "enhanced vouchers" significantly limit the Total Tenant Payment for subsidized families living in high-rent neighborhoods where the unit contract rent exceeds the payment standard. The housing authority pays the cost of high unit contract rents, not the subsidized families.

VII. <u>STATEMENT OF FACTS</u>

32. On information and belief, the building was constructed using financing through the federal Section 8 New Construction program. 24 C.F.R. Part 880.

33. Under the terms of this financing, 58 units in the building were made available to low-income individuals who paid 30% of their adjusted gross income as rent. The remaining rent was paid by the United States Department of Housing and Urban Development. 24 C.F.R.

§ 880.501.

34. On information and belief, the building was originally contracted to provide this subsidy for 20 years, the contract expiring in 2002.

35. On information and belief, the building renewed its contract with HUD for an additional 5 years, extending the Section 8 New Construction subsidy through June 30, 2007.

36. On information and belief, the building "opted out" of the Section 8 New Construction contract with HUD effective June 30, 2007.

37. On information and belief, in compliance with 42 U.S.C. § 1437f(t)(1)(B), CHAC issued "enhanced vouchers" to the subsidized tenants in the building when the building "opted out" of the Section 8 New Construction contract.

### Charles Handy

38. Mr. Handy has lived in his apartment for about 11 years. His tenancy has been subsidized by the federal government for the entire time he has occupied his apartment.

39. On June 22, 2007, Mr. Handy entered into a lease with Planned Property for a Contract Rent of $1,700.00, effective July 12, 2007.

40. On August 23, 2007, CHAC issued Mr. Handy a Notice indicating that his Total Tenant Payment was $145.00 per month, effective July 12, 2007. That Notice also indicated that the Contract Rent for his apartment was $1,700.00, of which CHAC would pay $1,555.00 per month.

41. On or about January 9, 2008, Planned Property issued a Landlord's Five Day's Notice to Mr. Handy demanding $552.00 in unpaid rent.

42. Mr. Handy was not behind in making his Total Tenant Payments at the time this Notice was issued.

43. On January 21, 2008, Planned Property created an account statement for Mr. Handy listing a balance due of $2259.42.

44. On July 30, 2008, Planned Property created another account statement for Mr. Handy, now listing a balance due of $552.00.

45. Because Mr. Handy is current in his Total Tenant Payments, he owes no monetary obligation to Planned Property. He does not owe the $2,259.42 demanded in Planned Property's January 21, 2008 account statement or the $552.00 demanded in the July 30, 2008 account statement.

46. The amount showing on Mr. Handy's account statements is an amount for which either CHAC or Planned Property must be responsible.

### Dorothy Luckett

47. Ms. Luckett has lived in her apartment for the last 25 years. She is disabled and confined to a wheelchair. Her tenancy has been subsidized by the federal government for the entire time she has occupied her apartment.

48. Ms. Luckett signed a new lease with Planned Property within the last year, but Planned Property did not give her a copy of that lease.

49. On November 24, 2007, CHAC created a notice informing Ms. Luckett that effective September 19, 2007 her Total Tenant Payment would be set at $113.00 per month and CHAC would make a monthly HAP Payment of $2,087.00 on Ms. Luckett's account. CHAC's notice assumes a total contract rent of $2,200.00 per month.

50. On or about January 9, 2008, Planned Property created a Landlord's Five Day's Notice for Ms. Luckett demanding $5,426.00 in past due rent.

51. On July 30, 2008, Planned Property created another account statement for Ms. Luckett listing a balance due of $5,426.00.

52. Because Ms. Luckett is current in her Total Tenant Payments, she owes no monetary obligation to Planned Property. She does not owe the $5,426.00 Planned Property demanded in its July 30, 2008 account statement.

53. The amount showing on Ms. Luckett's January 9, 2008 Landlord's Five Day's Notice and on her July 30, 2008 account statement is an amount for which either CHAC or Planned Property must be responsible.

### Rita Dunn

54. Ms. Dunn has lived in her apartment for 12 years. Her tenancy has been subsidized by the federal government for the entire time she has occupied her apartment.

55. On July 1, 2007, Ms. Dunn entered into a lease with Planned Property providing for a Contract Rent of $2,200.00 per month, effective July 1, 2007.

56. On information and belief, on July 31, 2007, CHAC failed Ms. Dunn's apartment because Planned Property failed to maintain Ms. Dunn's unit up to Housing Quality Standards.

57. On information and belief, despite Planned Property's failure to meet Housing Quality Standards, CHAC approved the lease for Ms. Dunn's apartment and began making Housing Assistance Payments to Planned Property. Ms. Dunn has no knowledge about what transpired between Planned Property and CHAC in the approval of her lease.

58. On November 24, 2007, CHAC created a notice informing Ms. Dunn that effective September 19, 2007 her Total Tenant Payment would be reduced to $2.00 per month and CHAC would make a monthly HAP Payment of $2,198.00 on Ms. Dunn's account.

59. On or about January 9, 2008, Planned Property created a Landlord's Five Day's Notice demanding that Ms. Dunn pay $7,913.00 in rent.

60. On February 19, 2008, Planned Property created an account statement for Ms. Dunn listing a balance due of $7,931.00.

61. On July 23, 2008, Planned Property created an account statement for Ms. Dunn listing a balance due of $7,921.00.

62. Because Ms. Dunn is current in her Total Tenant Payments, she owes no monetary obligation to Planned Property. She does not owe the $7,921.00 demanded in Planned Property's July 23, 2008 Notice.

63. The amount showing on Ms. Dunn's July 23, 2008 account statement is an amount for which either CHAC or Planned Property must be responsible.

### Allegations Common to All Plaintiffs

64. All Plaintiffs have made all payments required of them under the terms of the federal housing subsidy they receive.

65. Despite being current in their own obligations, and with Total Tenant Payments as low as $2.00 per month, all Plaintiffs have received demands from Planned Property for payment far in excess of any amount they could ever owe under the terms of their subsidies, ranging from $552.00 to $7,931.00.

66. These monies demanded can only be the responsibility of either Planned Property or CHAC.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Court:

A. Enter an Order declaring that Plaintiffs are not responsible for and have no obligation to pay the monies demanded them in excess of their individual Total Tenant Payments;

B. Enter and Order declaring that either Planned Properties Management, Inc. or CHAC, Inc. is responsible for and has an obligation to pay the amounts remaining on each tenant's account, or that the amount be apportioned between these Defendants as the particular facts require;

C. Enter an Order declaring that Plaintiffs' Total Tenant Payment cannot exceed 30% of their adjusted family incomes;

D. Enter a preliminary and permanent injunction enjoining the Defendants from (1) seeking to collect the disputed monies from Plaintiffs and (2) commencing forcible entry and detainer proceedings against Plaintiffs;

E. Enter an order that Plaintiffs shall not be required to post bond as security for the issuance of a temporary restraining order or preliminary injunction; and

F. Grant Plaintiffs such further relief as this Court deems just and proper.

Dated: August 8, 2008.　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　s/ Charles R. Petrof

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff

Attorneys for Plaintiff:
Legal Assistance Foundation of Metropolitan Chicago
Richard Wheelock
Charles R. Petrof
111 W. Jackson, 3d Floor

11

Chicago, IL 60604
(312) 341-1070